# SAVE-MOR DRUGS, BETHESDA, INC. *v.* THE UPJOHN COMPANY

[No. 205, September Term, 1960.]

*Decided May 2, 1961.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Milton Heller,* with whom was *Andrew A. Lipscomb* on the brief, for appellant.

*J. Nicholas Shriver, Jr.,* and *J. Paul Bright, Jr.,* with whom were *Cross & Shriver, David E. Betts, Robert H. Hosick, Robert C. Carson, Murray D. Welch, Jr.,* and *Gerard Thomas* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This appeal brings before this Court: (i) a finding of the Circuit Court for Montgomery County that the defendant-appellant, Save-Mor Drugs, Bethesda, Inc. (Save-Mor), had violated an interlocutory injunction issued in a suit under the Maryland "Fair Trade Act" (Code (1957), Art. 83, §§ 102-110), brought by the plaintiff-appellee, The Upjohn Company (Upjohn); and (ii) an order dated August 19, 1960,

based upon that finding, requiring Save-Mor to pay to Upjohn, within ten days, the sum of $4,175.00, "as a reimbursement for costs of this litigation and reasonable solicitor's fees to date." The case was heard in the Circuit Court on separate citations for criminal contempt and for civil contempt. Save-Mor was found not guilty of criminal contempt, and the finding and award against it were for civil contempt.

Save-Mor opened its retail drugstore at Bethesda on February 9, 1959, and began at once to sell at cut prices. Two days later Save-Mor's president informed Upjohn's district supervisor that Save-Mor wished to establish a reputation as a "cut-rate" store, that he thought it would take Upjohn two or three months to achieve successful termination of any Fair Trade injunction proceedings and that in the meanwhile Save-Mor would have established itself as a "cut-rate" store in the neighborhood, and that an injunction then would not hurt its business. Upjohn filed its bill for an injunction, and also for damages, on February 12, 1959, and on that day Judge Pugh issued an *ex parte* injunction restraining Save-Mor from selling Upjohn products at less than Upjohn's Maryland Fair Trade prices. This injunction was extended to March 3, 1959, on which date a hearing was held before Judge Pugh at which both parties were represented by counsel and offered testimony. On March 4, 1959, Judge Pugh granted the interlocutory injunction, which, in the proceedings now before us, Judge Shure found Save-Mor to have violated. The portion of Judge Pugh's injunctive order of March 4, 1959, which is here directly relevant reads as follows:

> "* * * that pending a final determination of this case, Save-Mor Drugs, Bethesda, Inc., a body corporate, Defendant herein, its officers, agents, servants, employees and attorneys, and all other persons in active concert or participation with them, be and they are hereby enjoined and restrained from advertising, offering for sale or selling, at retail in the State of Maryland, any products manufactured, distributed or sold by the Upjohn Company, Plaintiff

herein,· which bear Plaintiff's trademarks, brands or name, at prices which are less than the minimum retail resale prices now or hereafter established by Plaintiff pursuant to its fair trade agreements, entered into with Maryland retailers, and from making any allowance, gift, rebate, or concession in connection with the said advertising, offering for sale or selling, at retail in the State of Maryland, any of said products of Plaintiff at less than said prices * * *."

At the hearing on March 3, 1959, the defendant, Save-Mor, brought up, but did not press, "the issue of whether or not a prescription item can be Fair Traded by its manufacturer," saying that it wished to raise this issue at the final hearing. We think it clear that the terms of the injunction are broad enough to apply to prescription drugs as well as to other trademarked products of Upjohn. This issue and the issue of whether or not Upjohn's trademark products were in fair and open competition with products of the same general class produced by others were raised by the answer filed March 9, 1959—Save-Mor's contention as to prescription drugs being asserted as a specific defense, and the issue as to fair and open competition being raised by Upjohn's allegation to that effect and by Save-Mor's denial of it. These are also the principal issues which Save-Mor seeks to raise on this appeal. Upjohn's primary contention is that the only issue is whether Save-Mor must obey the interlocutory injunction until it is modified or dissolved, and that Save-Mor may not violate its terms and then attack the injunction collaterally in a contempt proceeding.

That is undoubtedly the rule where the contemnor is prosecuted for criminal contempt. Only a complete lack of jurisdiction in the court to grant the injunction, and not merely error in granting it, could avail the defendant. No extensive citation of authority is necessary. See *Howat v. Kansas,* 258 U. S. 181; *United States v. United Mineworkers of America,* 330 U. S. 258; *Emergency Hospital v. Stevens,* 146 Md. 159,

126 A. 101; *Donner v. Calvert Distillers Corp.*, 196 Md. 475, 77 A. 2d 305.

It is clear under the pleadings, the express rulings of the trial court and the rules stated in *Kelly v. Montebello Park Co.*, 141 Md. 194, 118 A. 600, that the case before us is purely one of civil contempt. We think it also clear that the reimbursement for costs of this litigation and solicitors' fees awarded to the plaintiff is remedial in nature rather than coercive. It is essentially an award for damages for past infringement of the plaintiff's rights under the injunction and is not designed as a measure to coerce future compliance.

There are a number of cases in which the rule against collateral attack in contempt proceedings upon the injunction for violation of which such proceedings are brought has been stated, and the rule has been held to be applicable in cases of civil contempt. In most such cases, however, the right of the complainant to injunctive relief on the merits has been established and, if challenged, has been upheld on appeal. See *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 86 F. 2d 727 (C. C. A., 2d); *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F. 2d 467 (C. A., 2d); *Sunbeam Corp. v. Carr*, 258 F. 2d 804 (C. A., 2d); *Parker Pen Co. v. Stern*, 158 F. Supp. 703 (D. C., S. D., N. Y.); *Cummings-Landau Machinery Co. v. Koplin*, 386 Ill. 368, 54 N. E. 2d 462; *Metropolitan Funeral Directors Ass'n v. Zebrowski*, 18 Misc. 2d 303, 193 N. Y. S. 2d 39; a note in 12 A.L.R. 2d 1059, 1107, 1115; and the decision of the Supreme Court in *McComb v. Jacksonville Paper Co.*, 336 U. S. 187. See also *Maggio v. Zeitz* (a bankruptcy turnover order case), 333 U. S. 56, 59. In each of the equity cases above cited there had been a final decree based upon either a hearing on the merits or consent.

The rule was flatly stated to be well established as applicable in civil as well as in criminal contempt cases in *Salvage Process Corp. v. Acme Tank Cleaning Process Corp., supra,* 86 F. 2d 727 (C. C. A., 2d, per curiam), but the practical limitation of the rule is also well shown by that case. There the defendant had been fined (or subjected to an award in

favor of the plaintiff) in civil contempt proceedings for violation of a temporary injunction, the fine or award being (as in the instant case) for the plaintiff's expenses in the contempt proceedings. In a companion case, decided by the Circuit Court of Appeals the same day as the contempt case, the patents upon which the plaintiff's suit was based were held invalid and the order for the temporary injunction was therefore reversed. It was held in the contempt case that the plaintiff's right to the fine or award fell with the reversal of the injunction order.

The result in the *Salvage Process* case is in accord with the general rule that the right of the complainant to an award for civil contempt in the nature of damages stands or falls with his right to the injunction. The rule has not infrequently been stated in cases where an appeal from such an order was held not sustainable because· it was not from a final order, and such an order has been held reviewable only on appeal from a final decree. The general rule that an award to the complainant for civil contempt depends upon his right to an injunction will be found stated in *Worden v. Searls,* 121 U. S. 14; *Gompers v. Bucks Stove & Range Co.,* 221 U. S. 418 (where the settlement of the case ended the complainant's right to an award previously made for civil contempt) ; *United States v. United Mineworkers, supra,* and cases (in addition to *Worden* and *Gompers*) therein cited (330 U. S. 295), one of which is *Salvage Process Corp. v. Acme Tank Cleaning Process Corp., supra;* and *Donner v. Calvert Distillers Corp., supra,* itself a case of criminal contempt (at pp. 486-487 of 196 Md.). It was applied in *Kaehler v. Dobberpuhl,* 56 Wis. 497, 14 N. W. 631; and in *Kaehler v. Halpin,* 59 Wis. 40, 17 N. W. 868, in each of which cases the plaintiff was held not to have been entitled to an injunction and the award for civil contempt for violation of a temporary injunction therefore fell. In *Donner v. Calvert Distillers Corp.,* at the point just cited, this Court quoted the following from the opinion of the Supreme Court in the *United Mineworkers* case (330 U. S. at 294-295, omissions ours) : "It does not follow, of course, that simply because a defendant may be punished for

criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued [citing cases] * * *. If the Norris-La Guardia Act were applicable in this case, the conviction for civil contempt would be reversed in its entirety."

We think it clear that there was no lack of jurisdiction (in the broad sense of the power to hear and determine) in the Circuit Court in the instant case, and that it had jurisdiction over the subject matter and over the parties. The appellant's contention that the Circuit Court lacked "jurisdiction" to issue an injunction under the Fair Trade Act applicable to trademarked prescription drugs we find unsupportable, the question being rather one of whether the order was erroneous in being made applicable to any such products or to the particular products here involved. *Schwegmann Bros. v. Hoffmann-La Roche, Inc.*, 221 F. 2d 326 (C. A., 5th) (cert. denied 350 U. S. 839), squarely holds that under the Louisiana statute, which is similar to the Maryland Fair Trade Act, sales of such articles may be subjected to Fair Trade prices. Though we may regard this case as a more impressive authority than press releases issued by the Department of Justice and relied upon by the appellant, we do not find it necessary to pass upon this question at this time.

The difficulty arises in applying both the rule against collateral attack in contempt proceedings upon the validity of an injunction, and the rule that the right to an award, remedial in nature, for civil contempt stands or falls with the complainant's right to an injunction. A good many cases, such as *Matter of Christensen Engineering Co.*, 194 U. S. 458, seem to have presented no such difficulty where a contempt order had been held interlocutory and not reviewable except on or in conjunction with an appeal from a final order. Whatever the law may be in other jurisdictions or may previously have been in this State (cf. statements in *Kelly v. Montebello Park Co., supra,* 141 Md. at 204; and in *Emergency Hospital v. Stev-*

*ens, supra,* 146 Md. at 164-165), it is clear that under Code (1957), Art. 5, § 7 (e), which is derived from Ch. 593 of the Acts of 1927, an interlocutory order entered by a court of equity "remedial in its nature, adjudging in contempt of court any party to a cause or any person not a party thereto" is appealable (subject to an exception not here relevant). The appellee does not contend otherwise, but the fact that an interlocutory order is appealable does not define the scope of the matters open on appeal.

The appellant, Save-Mor, could have appealed from the order granting the interlocutory injunction, but it was not bound to do so, and it could bring up for review the questions which it might have so presented on appeal from the final decree. Maryland Rule 887; *Washington Cleaners & Dyers v. Albrecht,* 157 Md. 389, 146 A. 233. It is also perfectly true that the defendant might well have pressed for an early hearing on the final injunction, but it is likewise true that the complainant might have done so.

We hold that the rule against collateral attack (except for want of jurisdiction) upon the injunction alleged to have been violated is applicable to civil as well as to criminal contempt cases and that no want of jurisdiction has been shown here. We believe that the same rule applies on appeal as well as to the initial proceedings in the trial court.

Under our view, the question of whether the evidence was sufficient to sustain a finding that the appellant had violated the injunction would be subject to review on appeal. Here, however, there is no contention that if, as we find to be the case, the injunction (whether erroneously issued or not) applied to prescription, trademarked drugs manufactured or sold by Upjohn, the evidence was not sufficient to support the finding that Save-Mor had sold such drugs in violation of the injunction at prices below Upjohn's Maryland Fair Trade prices therefor. Whether or not the particular relief granted was proper would also be a matter open for review on appeal, but no question is raised here as to the kind of relief granted and we shall therefore not go into that matter.

If the merits of the injunction were open to collateral attack

in contempt proceedings, we could well have a series of piece-meal appeals based upon any number of separate items contained in the appellee's Maryland Fair Trade price list, which the appellant might contend were not, or could not properly be, covered by an injunction issued under the Fair Trade Act. Such questions could be reviewed on an appeal from an order granting an injunction, whether interlocutory or final, as we have already stated. The defendant could at any time seek a modification of the order in the trial court.

The contemnor who makes a payment pursuant to an order such as that now before us would, we think, be entitled to recover from the plaintiff the amount of such payment, if the defendant should ultimately prevail on the contention that the plaintiff was not entitled to an injunction. Thus the rule that the plaintiff's right to an award for civil contempt falls when his right to an injunction falls, would be gratified. Any risk of loss could, we suppose, be protected by the plaintiff's injunction bond; and we see no reason why, on proper application, the trial court might not require such increase, if any, in the amount of the bond as might seem appropriate.

Since the case has not been determined on the merits and any further award to the appellee for solicitor's fees would, therefore, be essentially contingent, we see no occasion at this time to pass upon the appellee's request for such an allowance for the services of its solicitors on this appeal. Such a request may be considered by the trial court at such time as it may deem appropriate.

*Order affirmed; the appellant to pay the costs of this appeal.*